# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF CALIFORNIA

EDWARD FIELDS,

    Plaintiff,

v.

COMMISSIONER OF SOCIAL SECURITY,

    Defendant.

No. 2:18-CV-0001-DMC

MEMORANDUM OPINION AND ORDER

        Plaintiff, who is proceeding with retained counsel, brings this action for judicial review of a final decision of the Commissioner of Social Security under 42 U.S.C. § 405(g). Pursuant to the written consent of all parties (ECF Nos. 8 and 9), this case is before the undersigned as the presiding judge for all purposes, including entry of final judgment. See 28 U.S.C. § 636(c). Pending before the court are the parties' cross motions for Summary Judgement. (ECF Nos. 21 and 22).

        The court reviews the Commissioner's final decision to determine whether it is: (1) based on proper legal standards; and (2) supported by substantial evidence in the record as a whole. See Tackett v. Apfel, 180 F.3d 1094, 1097 (9th Cir. 1999). "Substantial evidence" is more than a mere scintilla, but less than a preponderance. See Saelee v. Chater, 94 F.3d 520, 521 (9th Cir. 1996). It is ". . . such evidence as a reasonable mind might accept as adequate to support

a conclusion." Richardson v. Perales, 402 U.S. 389, 402 (1971). The record as a whole, including both the evidence that supports and detracts from the Commissioner's conclusion, must be considered and weighed. See Howard v. Heckler, 782 F.2d 1484, 1487 (9th Cir. 1986); Jones v. Heckler, 760 F.2d 993, 995 (9th Cir. 1985). The court may not affirm the Commissioner's decision simply by isolating a specific quantum of supporting evidence. See Hammock v. Bowen, 879 F.2d 498, 501 (9th Cir. 1989). If substantial evidence supports the administrative findings, or if there is conflicting evidence supporting a particular finding, the finding of the Commissioner is conclusive. See Sprague v. Bowen, 812 F.2d 1226, 1229-30 (9th Cir. 1987). Therefore, where the evidence is susceptible to more than one rational interpretation, one of which supports the Commissioner's decision, the decision must be affirmed, see Thomas v. Barnhart, 278 F.3d 947, 954 (9th Cir. 2002), and may be set aside only if an improper legal standard was applied in weighing the evidence, see Burkhart v. Bowen, 856 F.2d 1335, 1338 (9th Cir. 1988).

For the reasons discussed below, the Commissioner's final decision is affirmed.

## I. THE DISABILITY EVALUATION PROCESS

To achieve uniformity of decisions, the Commissioner employs a five-step sequential evaluation process to determine whether a claimant is disabled. See 20 C.F.R. §§ 404.1520 (a)-(f) and 416.920(a)-(f). The sequential evaluation proceeds as follows:

Step 1 Determination whether the claimant is engaged in substantial gainful activity; if so, the claimant is presumed not disabled and the claim is denied;

Step 2 If the claimant is not engaged in substantial gainful activity, determination whether the claimant has a severe impairment; if not, the claimant is presumed not disabled and the claim is denied;

Step 3 If the claimant has one or more severe impairments, determination whether any such severe impairment meets or medically equals an impairment listed in the regulations; if the claimant has such an impairment, the claimant is presumed disabled and the claim is granted;

/ / /

2

| | | |
|---|---|---|
| Step 4 | | If the claimant's impairment is not listed in the regulations, determination whether the impairment prevents the claimant from performing past work in light of the claimant's residual functional capacity; if not, the claimant is presumed not disabled and the claim is denied; |
| Step 5 | | If the impairment prevents the claimant from performing past work, determination whether, in light of the claimant's residual functional capacity, the claimant can engage in other types of substantial gainful work that exist in the national economy; if so, the claimant is not disabled and the claim is denied. |

See 20 C.F.R. §§ 404.1520 (a)-(f) and 416.920(a)-(f).

To qualify for benefits, the claimant must establish the inability to engage in substantial gainful activity due to a medically determinable physical or mental impairment which has lasted, or can be expected to last, a continuous period of not less than 12 months. See 42 U.S.C. § 1382c(a)(3)(A). The claimant must provide evidence of a physical or mental impairment of such severity the claimant is unable to engage in previous work and cannot, considering the claimant's age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy. See Quang Van Han v. Bower, 882 F.2d 1453, 1456 (9th Cir. 1989). The claimant has the initial burden of proving the existence of a disability. See Terry v. Sullivan, 903 F.2d 1273, 1275 (9th Cir. 1990).

The claimant establishes a prima facie case by showing that a physical or mental impairment prevents the claimant from engaging in previous work. See Gallant v. Heckler, 753 F.2d 1450, 1452 (9th Cir. 1984); 20 C.F.R. §§ 404.1520(f) and 416.920(f). If the claimant establishes a prima facie case, the burden then shifts to the Commissioner to show the claimant can perform other work existing in the national economy. See Burkhart v. Bowen, 856 F.2d 1335, 1340 (9th Cir. 1988); Hoffman v. Heckler, 785 F.2d 1423, 1425 (9th Cir. 1986); Hammock v. Bowen, 867 F.2d 1209, 1212-1213 (9th Cir. 1989).

///
//
///
///

## II. THE COMMISSIONER'S FINDINGS

Plaintiff applied for social security benefits on July 8, 2014. See AR 17.[1] In the application, plaintiff claims disability began on April 1, 2014. See id. In his opening brief, plaintiff claims he is disabled due to limitations caused by type II diabetes with diabetic polyneuropathy, osteoarthritis involving both ankles and feet, moderate degenerative joint disease in his bilateral toes, and obesity. Plaintiff's claim was initially denied. Following denial of reconsideration, plaintiff requested an administrative hearing, which was held on July 11, 2016, before Administrative Law Judge (ALJ) Curtis Renoe. In a September 7, 2016, decision, the ALJ concluded plaintiff is not disabled based on the following relevant findings:

1. The claimant has the following severe impairment(s): diabetes, hypertension, degenerative joint disease, hand/feet neuropathy, obesity, and ankle edema;

2. The claimant does not have an impairment or combination of impairments that meets or medically equals an impairment listed in the regulations;

3. The claimant has the following residual functional capacity: medium work, except he can lift and carry 50 pounds occasionally and 25 pounds frequently; he can sit 6 hours in an 8-hour workday and alternate to standing for 5 minutes, every 30 minutes of sitting; he can stand up to 6 hours in an 8-hour workday and alternate to sitting for 5 minutes, after every 30 minutes of standing; he can walk up to 6 hours in an 8-hour workday and alternate to sitting for 5 minutes, after every 30 minutes of walking; he can push and pull as much as he can lift and carry; he can use foot controls with his right foot and left foot occasionally. He can use hand controls with his bilateral hands frequently; he can handle, finger, and feel with his bilateral hands frequently; he can climb ramps and stairs occasionally; he can climb ladders, ropes, or scaffolds occasionally; he can crawl occasionally he can never work with unprotected heights or moving mechanical parts; and he can never work in extreme cold or extreme heat;

4. Considering the claimant's age, education, work experience, residual functional capacity, and vocational expert testimony, claimant can perform his past relevant work as a kitchen helper, childcare provider, construction painter, counselor aid, or maintenance worker.

See id. at 19-26.

---

[1] Citations are the to the Administrative Record (AR) lodged on June 25, 2018 (ECF No. 12).

After the Appeals Council declined review on October 31, 2017, this appeal followed.

### III.  DISCUSSION

Plaintiff argues: (1) the ALJ failed to properly evaluate the medical opinions of Nurse Practitioner Shirikian; and (2) the ALJ failed to properly evaluate plaintiff's statements and testimony.

**A.     Medical Opinions**

"The ALJ must consider all medical opinion evidence." Tommasetti v. Astrue, 533 F.3d 1035, 1041 (9th Cir. 2008) (citing 20 C.F.R. § 404.1527(b)). The ALJ errs by not explicitly rejecting a medical opinion. See Garrison v. Colvin, 759 F.3d 995, 1012 (9th Cir. 2014). The ALJ also errs by failing to set forth sufficient reasons for crediting one medical opinion over another. See id.

Under the regulations, only "licensed physicians and certain qualified specialists" are considered acceptable medical sources. 20 C.F.R. § 404.1513(a); see also Molina v. Astrue, 674 F.3d 1104, 1111 (9th Cir. 2012). Where the acceptable medical source opinion is based on an examination, the ". . . physician's opinion alone constitutes substantial evidence, because it rests on his own independent examination of the claimant." Tonapetyan v. Halter, 242 F.3d 1144, 1149 (9th Cir. 2001). The opinions of non-examining professionals may also constitute substantial evidence when the opinions are consistent with independent clinical findings or other evidence in the record. See Thomas v. Barnhart, 278 F.3d 947, 957 (9th Cir. 2002). Social workers are not considered an acceptable medical source. See Turner v. Comm'r of Soc. Sec. Admin., 613 F.3d 1217, 1223-24 (9th Cir. 2010). Nurse practitioners and physician assistants also are not acceptable medical sources. See Dale v. Colvin, 823 F.3d 941, 943 (9th Cir. 2016). Opinions from "other sources" such as nurse practitioners, physician assistants, and social workers may be discounted provided the ALJ provides reasons germane to each source for doing so. See Popa v. Berryhill, 872 F.3d 901, 906 (9th Cir. 2017), but see Revels v. Berryhill, 874 F.3d 648, 655 (9th Cir. 2017) (quoting 20 C.F.R. § 404.1527(f)(1) and describing circumstance when opinions from "other sources" may be considered acceptable medical opinions).

5

The weight given to medical opinions depends in part on whether they are proffered by treating, examining, or non-examining professionals. See Lester v. Chater, 81 F.3d 821, 830-31 (9th Cir. 1995). Ordinarily, more weight is given to the opinion of a treating professional, who has a greater opportunity to know and observe the patient as an individual, than the opinion of a non-treating professional. See id.; Smolen v. Chater, 80 F.3d 1273, 1285 (9th Cir. 1996); Winans v. Bowen, 853 F.2d 643, 647 (9th Cir. 1987). The least weight is given to the opinion of a non-examining professional. See Pitzer v. Sullivan, 908 F.2d 502, 506 & n.4 (9th Cir. 1990).

In addition to considering its source, to evaluate whether the Commissioner properly rejected a medical opinion the court considers whether: (1) contradictory opinions are in the record; and (2) clinical findings support the opinions. The Commissioner may reject an uncontradicted opinion of a treating or examining medical professional only for "clear and convincing" reasons supported by substantial evidence in the record. See Lester, 81 F.3d at 831. While a treating professional's opinion generally is accorded superior weight, if it is contradicted by an examining professional's opinion which is supported by different independent clinical findings, the Commissioner may resolve the conflict. See Andrews v. Shalala, 53 F.3d 1035, 1041 (9th Cir. 1995).

A contradicted opinion of a treating or examining professional may be rejected only for "specific and legitimate" reasons supported by substantial evidence. See Lester, 81 F.3d at 830. This test is met if the Commissioner sets out a detailed and thorough summary of the facts and conflicting clinical evidence, states her interpretation of the evidence, and makes a finding. See Magallanes v. Bowen, 881 F.2d 747, 751-55 (9th Cir. 1989). Absent specific and legitimate reasons, the Commissioner must defer to the opinion of a treating or examining professional. See Lester, 81 F.3d at 830-31. The opinion of a non-examining professional, without other evidence, is insufficient to reject the opinion of a treating or examining professional. See id. at 831. In any event, the Commissioner need not give weight to any conclusory opinion supported by minimal clinical findings. See Meanel v. Apfel, 172 F.3d 1111, 1113 (9th Cir. 1999) (rejecting treating physician's conclusory, minimally supported opinion); see

also Magallanes, 881 F.2d at 751.

     1.     The ALJ's Analysis

At Step 4, the ALJ evaluated the medical opinions of record to determine plaintiff's residual functional capacity. See AR 23-25. As to Nurse Practitioner Shirikian, the ALJ stated:

> In addition, the undersigned has read and considered the opinion of treating nurse practitioner, Sossy R. Shirikian and assigned little weight (Exhibits 17F, 18F). Nurse Shirikian stated that due to his bilateral neuropathy of his lower extremities, he is not able to maintain daily activities or safely maintain employment (Exhibit 17F). In addition, she opined the following functional limitations, including: he can sit up to 15 minutes at a time and stand up to 5 minutes before needing to change positions; he can sit, stand, and walk up to less than 2 hours in day total; he can occasionally lift and carry up to 10 pounds and less than 10 pounds frequently; and he can rarely finger, grip, turn objects of use (sic) his hands for fine manipulation (Exhibit 18F). Due to her treating relationship with the claimant, Nurse Shirikian's opinion is given some weight. The opinions of the treating physician are considered more reliable because of the duration of the treating relationship (see 20 CFR 404.1S27(c)(2) and 416.927(c)(2)). However, because these opinions are not from an acceptable medical source, the undersigned gives it less weight than other qualifying medical source opinions (20 CFR 404.1S13(a)(e) and 416.913(a)(e)). Additionally, Nurse Shirikian's opined limitations are more restrictive than the medical evidence supports and contradicts repeated results of normal physical examinations in the record. Moreover, the restrictions are not consistent with the claimant's admitted daily activities, which includes taking walks and fixing and "tinkering" with objects at home (Hearing Testimony, Exhibit 7F). Finally, although her diagnosis of neuropathy is consistent with the medical evidence, her statement that the claimant is not employable due to his impairment has no probative value. Whether the claimant is "disabled" is a determination reserved to the Commissioner (20 CFR 404.1527(d) and 416.927(d); and SSR 96-5p). As such, the undersigned has assigned Nurse Shirikian's opinions little weight.

CAR 24-25.

     2.     Plaintiff's Contentions

Plaintiff argues:

> First, even though NP Shirikian was not a "doctor," Social Security rules specifically provide that opinions, such as hers, can be used to "show the severity of the individual's impairment(s) and how it affects the individual's ability to function." See, SSR 06-3p. (footnote omitted). . . .
> Second, NP Shirikian's opinion was the most recent opinion of record regarding Mr. Fields's functional abilities and limitations. Her opinion was dated July 8, 2016. In the 9th Circuit "a treating physician's most recent medical reports are highly probative" especially in cases, like Mr. Fields's which involved a worsening or degenerative condition. See,

*Osenbrock v. Apfel*, 240 F.3d 1157,1165(9th Cir. 2001). *See also, Payan v. Chater*, 959F. Supp. 1197, 1203 (C.D. Cal 1996), citing *Young v. Heckler*, 803 F.2d 963, 968 (9th Cir. 1986).

Third, NP Shirikian's assessed limitations were consistent with the medical record and Mr. Fields' s diagnosed impairments of type II diabetes mellitus with diabetic polyneuropathy in his hands and feet; osteoarthrosis involving both ankles and feet; moderate degenerative joint disease in his bilateral toes; and obesity. . . .

Third [sic], the ALJ claimed that NP Shirikian's assessed restrictions were not consistent with Mr. Fields's admitted daily activities, which included "taking walks and fixing and "tinkering" with object sat home (Hearing Testimony, Exhibit 7F)." As set forth in the Summary of Relevant Testimony and in Argument II, Mr. Fields's "admitted daily activities" were extremely limited. He reported in September of 2014, that his "hobbies included fiddling with stuff and trying to put them together and make them work." AR 366. At that time, he was also able to prepare simple meals and work on the computer for 30 minutes a day. AR 366. However, he testified at his hearing before the ALJ in 2016, almost two years later, that his condition had deteriorated over the years and that the pain and numbness in his hands and feet had worsened. AR 45-46, 52-54. Consequently, what he could do by the time of his hearing was much less than he could do when he first stopped working. But at no time, was he performing activities of daily living that reflected an ability to work on a full-time basis. Nor were his activities of daily living inconsistent with NP Shirikian's assessed restrictions – restrictions that reflected her opinion of what he could do in a full-time, competitive work environment. Not what he could do in his own home, at his own pace, with the ability to sit or lay down whenever necessary.

Fourth [sic], even with respect to issues "reserved to the Commissioner," SSR 96-5p specifically cautions that:

> adjudicators must always carefully consider medical source opinions about *any* issue, including opinions about issues that are reserved to the Commissioner. For treating sources, the rules also require that we make every reasonable effort to recontact such sources for clarification when they provide opinions on issues reserved to the Commissioner and the bases for such opinions are not clear to us.

*See*, SSR 96-5p.

The ALJ could not simply reject NP Shirikian's opinion that Mr. Fields's impairments resulted in an "inability to safely maintain employment." AR 507.

Finally, plaintiff contends the opinions provided by Nurse Practitioner Shirikian "should have outweighed" the opinions provided by Dr. Eskander upon which the ALJ relied.

///

///

///

8

3. <u>Disposition – The ALJ Properly Evaluated and Discounted the Medical Opinion of Nurse Practitioner Shirikian</u>

While the ALJ must consider all medical evidence, see <u>Tommasetti v. Astrue</u>, 533 F.3d 1035, 1041 (9th Cir. 2008), nurse practitioners and physicians assistants are not considered acceptable medical sources, and are instead defined as "other sources" which are not afforded the same deference as acceptable medical sources. See <u>Dale v. Colvin</u>, 823 F. 3d 941, 943 (9th Cir 2016); <u>Britton v. Colvin</u>, 787 F.3d 1011, 1012 (9th Cir 2015). Here, the ALJ has properly discounted the opinion of the "other source" nurse practitioner Shirikian, where the medical opinion at issue is inadequately supported by clinical findings and where the ALJ has provided reasons germane to the nurse practitioner for discounting her medical opinion.

In evaluating the medical opinion of the nurse practitioner, the ALJ cites to Exhibit 18F, the four-page Functional Capacity Questionnaire signed by nurse practitioner Shirikan. While the ALJ noted that the nurse practitioner set forth there a variety of functional limitations, the "Clinical findings" section of the questionnaire is blank. Where, as here, the medical opinion at issue is inadequately supported by clinical findings, such opinion evidence may be disregarded. <u>Britton</u>, 787F.3d 1011, 1012; <u>Burrell v. Colvin</u>, 775 F.3d 1133, 1140 (9th Cir 2014).

In further support of the ALJ's election to give "little weight" to the deficient medical opinion of the nurse practitioner, the ALJ sets forth specific reasons germane to this witness. <u>Popa v. Berryhill,</u> 872 F. 3d 901, 906 (9th Cir 2017). First, the ALJ expressly assessed that Shirikian's opined limitations are more restrictive than the medical evidence supports, noting that the medical evidence in fact contradicts "repeated results of normal physical examinations in the record." AR 20. Having specified that he had "read and considered all the medical evidence in the record," (Exhibits 1F through 18F), AR 22, the ALJ found that "numerous physical examinations in the record were unremarkable without any positive findings (Exhibit 4F, pp. 2, 4,

///
///
///
///

9

6, 8, 10, 11, p. 4; 13F, pp3-4, 10-13, 15). AR 23. Evidence of contradictory "normal physical examinations" cited by the ALJ included:

> . . .In November 2104, the claimant presented to the emergency room for lower extremity pain (Exhibit 6F). With the exception of an irregular ulcer on his left foot, his physical examination was unremarkable with a normal gait, no deformity and movement in all extremities. The claimant was treated for a cellulitis and diabetic ulcer with antibiotics (Exhibits 6F, 18F). Records in 2015 and 2016 showed the claimant's physical examination[s] were again, consistently unremarkable. In a routine check-up, the claimant did not have any subjective complaints or symptoms and the physical examination indicated no abnormal findings as to extremities or back; he had no edema, instability, effusions or tenderness to palpitation and he had normal range of motion in his back with intact peripheral pulses in intact peripheral pulses in his extremities (Exhibit 14F, p 11). . . .

AR 23

Second, the ALJ noted that the restrictions posed by Nurse Shirikian were not consistent with "the claimant's admitted daily activities." The ALJ identified the claimant's "admitted activities of daily living" to include:

> . . .[G]oing on light walks, taking care of personal grooming and hygiene, performing household chores, gardening, preparing simple meals, going on the computer, and fixing things at home (Hearing Testimony, Exhibit 7F). . . .

AR 21.

The activities specified above constitute "specific reasons germane to this witness" in support of the ALJ's conclusion that Shirikian's opinions should be afforded little weight. While plaintiff argues in opposition that claimant's own assessment of his admitted daily activities became more restricted in 2016, when claimant testified at his hearing that his condition had deteriorated over the years and his pain and numbness in his hands and feet had worsened, such contentions are not consistent with claimant's "unremarkable" physical examination results in 2015 and 2016, as also noted by the ALJ. AR 23. In this regard, the ALJ stated:

> In terms of the claimant's alleged diabetes, hypertension, degenerative joint disease, hand/feet neuropathy, and ankle edema, there is some objective medical evidence to show the claimant's impairment, however, there is nothing in the record that supports more restrictive limitations than those assessed herein.

AR 22.

10

The Court finds that the ALJ has documented sufficient factual grounds to afford the less weight to Nurse Shirikian's opinion. Underscoring the ALJ's election to give little weight to the opinion of Nurse Shirikian was the ALJ's appropriate recognition that the determination of "disabled" is properly reserved to the Commissioner. See 20 CFR 404.1527(d) and 416.927(d); see also Social Security Ruling 96-5p. To the extent that conclusion was erroneously incorporated in the statements of Nurse Shirikian, it is appropriately discounted along with the balance of the Shirikian opinion.

Plaintiff also contends that instead of according Nurse Shirikian's opinion the weight it deserved, the ALJ erroneously afforded the non-examining opinion of State Agency reviewer Dr. Eskander an undeserved "significant weight" valuation. Plaintiff's contentions are misplaced. Where, as here, the opinion of the State Agency doctor was supported by the medical record, the ALJ's reliance on that opinion is proper. Bray v. Astrue, 554 F.3d 1221 (9th Cir. 2009). AR 102-106. The ALJ found that Dr. Eskander conducted the requisite review of the medical evidence, and the conclusions then reported were properly supported, notwithstanding the subsequent creation of Nurse Shirikian's assessment. The weight afforded Dr. Eskander's opinion was appropriate vis-a vis the opinion of Nurse Shirikian, and Plaintiff's final argument with regard to the weight afforded the opinion of Nurse Shirikian does nothing to change the outcome here.

### B. Plaintiff's Statements and Testimony

The Commissioner determines whether a disability applicant is credible, and the court defers to the Commissioner's discretion if the Commissioner used the proper process and provided proper reasons. See Saelee v. Chater, 94 F.3d 520, 522 (9th Cir. 1996). An explicit credibility finding must be supported by specific, cogent reasons. See Rashad v. Sullivan, 903 F.2d 1229, 1231 (9th Cir. 1990). General findings are insufficient. See Lester v. Chater, 81 F.3d 821, 834 (9th Cir. 1995). Rather, the Commissioner must identify what testimony is not credible and what evidence undermines the testimony. See id. Moreover, unless there is affirmative evidence in the record of malingering, the Commissioner's reasons for rejecting testimony as not credible must be "clear and convincing." See id.; see also Carmickle v. Commissioner, 533 F.3d

1155, 1160 (9th Cir. 2008) (citing <u>Lingenfelter v Astrue</u>, 504 F.3d 1028, 1936 (9th Cir. 2007), and <u>Gregor v. Barnhart</u>, 464 F.3d 968, 972 (9th Cir. 2006)).

If there is objective medical evidence of an underlying impairment, the Commissioner may not discredit a claimant's testimony as to the severity of symptoms merely because they are unsupported by objective medical evidence. <u>See</u> <u>Bunnell v. Sullivan</u>, 947 F.2d 341, 347-48 (9th Cir. 1991) (en banc). As the Ninth Circuit explained in <u>Smolen v. Chater</u>:

> The claimant need not produce objective medical evidence of the [symptom] itself, or the severity thereof. Nor must the claimant produce objective medical evidence of the causal relationship between the medically determinable impairment and the symptom. By requiring that the medical impairment "could reasonably be expected to produce" pain or another symptom, the <u>Cotton</u> test requires only that the causal relationship be a reasonable inference, not a medically proven phenomenon.
>
> 80 F.3d 1273, 1282 (9th Cir. 1996) (referring to the test established in <u>Cotton v. Bowen</u>, 799 F.2d 1403 (9th Cir. 1986)).

The Commissioner may, however, consider the nature of the symptoms alleged, including aggravating factors, medication, treatment, and functional restrictions. <u>See</u> <u>Bunnell</u>, 947 F.2d at 345-47. In weighing credibility, the Commissioner may also consider: (1) the claimant's reputation for truthfulness, prior inconsistent statements, or other inconsistent testimony; (2) unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment; (3) the claimant's daily activities; (4) work records; and (5) physician and third-party testimony about the nature, severity, and effect of symptoms. <u>See</u> <u>Smolen</u>, 80 F.3d at 1284 (citations omitted). It is also appropriate to consider whether the claimant cooperated during physical examinations or provided conflicting statements concerning drug and/or alcohol use. <u>See</u> <u>Thomas v. Barnhart</u>, 278 F.3d 947, 958-59 (9th Cir. 2002). If the claimant testifies as to symptoms greater than would normally be produced by a given impairment, the ALJ may disbelieve that testimony provided specific findings are made. <u>See</u> <u>Carmickle</u>, 533 F.3d at 1161 (citing <u>Swenson v. Sullivan</u>, 876 F.2d 683, 687 (9th Cir. 1989)).

/ / /

/ / /

/ / /

12

Regarding reliance on a claimant's daily activities to find testimony of disabling pain not credible, the Social Security Act does not require that disability claimants be utterly incapacitated. See Fair v. Bowen, 885 F.2d 597, 602 (9th Cir. 1989). The Ninth Circuit has repeatedly held that the ". . . mere fact that a plaintiff has carried out certain daily activities . . . does not . . .[necessarily] detract from her credibility as to her overall disability." See Orn v. Astrue, 495 F.3d 625, 639 (9th Cir. 2007) (quoting Vertigan v. Heller, 260 F.3d 1044, 1050 (9th Cir. 2001)); see also Howard v. Heckler, 782 F.2d 1484, 1488 (9th Cir. 1986) (observing that a claim of pain-induced disability is not necessarily gainsaid by a capacity to engage in periodic restricted travel); Gallant v. Heckler, 753 F.2d 1450, 1453 (9th Cir. 1984) (concluding that the claimant was entitled to benefits based on constant leg and back pain despite the claimant's ability to cook meals and wash dishes); Fair, 885 F.2d at 603 (observing that "many home activities are not easily transferable to what may be the more grueling environment of the workplace, where it might be impossible to periodically rest or take medication"). Daily activities must be such that they show that the claimant is ". . .able to spend a substantial part of his day engaged in pursuits involving the performance of physical functions that are transferable to a work setting." Fair, 885 F.2d at 603. The ALJ must make specific findings in this regard before relying on daily activities to find a claimant's pain testimony not credible. See Burch v. Barnhart, 400 F.3d 676, 681 (9th Cir. 2005).

1. The ALJ's Analysis

At Step 4, the ALJ considered the credibility of plaintiff's statements and testimony in determining his residual functional capacity. See CAR 21-23. The ALJ stated:

> The claimant alleged that his physical impairments inhibit his ability to work or perform daily activities. In his hearing testimony, the claimant stated that he could no longer work because he was unable to stand on his feet due to constant foot pain. The claimant further noted that he has foot and hand pain from his diabetes mellitus; however since he began eating better and exercising, he stated his diabetes mellitus is under better control. The claimant indicated that he has problems performing some household tasks due to his foot impairment, including vacuuming, washing dishes, and going to the grocery store. The claimant stated that he has numbness and pain in his feet that lasts all day and is getting progressively worse even with medication. Moreover, the claimant stated that he would not work consecutive days due to his feet and he would elevate his feet 2 to 3 times a day. As for his hands, the claimant further

noted that his hand pain has been constant and also getting worse; he has weakened strength and drops things.

The claimant's statements regarding the extent of his symptoms and their limiting effects are compelling only to the extent that they are consistent with the evidence. Despite his impairments, the claimant has engaged in a somewhat normal level of daily activity and interaction. The claimant's admitted activities of daily living include: going on light walks, taking care of personal grooming and hygiene, performing some household chores, gardening, preparing simple meals, going on the computer, and fixing things at home (Hearing Testimony, Exhibit 7F). The claimant has described activities of daily living, which are not limited to the extent one would expect, and as such, the undersigned finds the claimant's ability to participate in such activities affects the persuasiveness of the claimant's allegations of functional limitations.

After careful consideration of the evidence, the undersigned finds that the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision.

The period at issue begins on the alleged onset date of April 1, 2014. The undersigned has read and considered all the medical evidence in the record (Exhibits 1F through 18F).

As indicated above, the undersigned finds the claimant's obesity is a severe impairment. The claimant's weight was documented in the medical records from a low of 267 pounds to a high of 274 pounds (Exhibit 7F, p. 5; Exhibit 14F, p. 9). At a height of 6 feet 4 inches, the claimant's body mass index (BMI) was in the range of 32.5 to 33.3. (footnote omitted). The claimant's weight, including the impact on his ability to ambulate, as well as his other body systems, has been considered within the functional limitations determined herein.

In terms of the claimant's alleged diabetes, hypertension, degenerative joint disease, hand/feet neuropathy, and ankle edema, there is some objective medical evidence to show the claimant's impairment, however, there is nothing in the record that supports more restrictive functional limitations than those assessed herein. Before the alleged onset date, the claimant was diagnosed with diabetes mellitus, hypertension, obesity, and peripheral neuropathy (Exhibit 1F). Although the claimant has received appropriate treatment for the allegedly disabling symptoms, which would normally weigh somewhat in the claimant's favor, the record also indicates the claimant was not entirely compliant with his treatment. One treating doctor noted that the claimant did not take his medication. In another instance, the treating doctor stated the claimant did not show up to his appointment and consequently the claimant was discharged from the diabetes clinic (Exhibits 1F, p. 1; 2F, p. 4). After the alleged onset date, the treating doctor also noted the claimant's elevated blood pressure and stated that it was likely due to non-compliance of his hypertension medication (Exhibit 11F, p. 1). Furthermore, in a consultative evaluation, the claimant also stated to the examiner that although he has

had hypertension for nine years, he did not take any medication (Exhibit 7F, p. 4).

During the relevant period, there is some objective medical evidence to show the claimant's impairment, however, there is nothing in the record that supports more restrictive functional limitations than those assessed herein. The claimant received treatment for bilateral foot pain (Exhibits 5F, 8F, 12F). During one examination, the treating doctor noted painful range of motion and pain on palpation on his feet (Exhibit 5F, p. 7). An x-ray of the claimant's bilateral foot indicated moderate degenerative joint disease in his bilateral toes with small erosions (Exhibit 4F, p. 23; 5F, p. 4). In addition, a diagnostic imaging of the claimant's chest revealed evidence of borderline cardiac enlargement with aortic tortuosity suggestive of underlying hypertension (Exhibit 9F). However, despite the claimant's subjective complaints and positive findings in the record, the claimant's prescribed treatment was rather routine and conservative. For the claimant's bilateral toes, the claimant's treating doctor recommended foot elevation, bandaging, and cream (Exhibit 5F, p. 7). For the claimant's diagnosed uncontrolled diabetes, the doctor recommended medical management of daily glucose testing and prescribed medication (Exhibit 11F). In addition, the record reveals that the treatment has been generally successful in controlling those symptoms; at times, the claimant reported with medication, his blood sugar levels and neuropathy improved (Exhibit 13F, pp. 5, 12; 7F, p. 4).

Furthermore, the record also included other objective evidence which does not support the level of severity as alleged by the claimant. Numerous physical examinations in the record were unremarkable without any positive findings (Exhibit 4F, pp. 2, 4, 6, 8, 10; 11F, p. 4; 13F, pp. 3-4, 10-13, 15). In November 2014, the claimant presented to the emergency room for lower extremity pain (Exhibit 6F). With the exception of an irregular ulcer on his left foot, his physical examination was unremarkable with a normal gait, no deformity and movement in all extremities. The claimant was treated for a cellulitis and diabetic ulcer with antibiotics (Exhibits 6F, 18F). Records in 2015 and 2016 showed the claimant's physical examination were again, consistently unremarkable. In a routine check-up, the claimant did not have any subjective complaints or symptoms and the physical examination indicated no abnormal findings as to his extremities or back; he had no edema, instability, effusions or tenderness to palpation and he had normal range of motion in his back with intact peripheral pulses in his extremities (Exhibit 14F, p. 11). In subsequent appointments, the claimant complained of neuropathy and uncontrolled diabetes, however the treating doctor again noted no positive findings during his examinations (Exhibit 14F, pp. 1-4; 5-7; 15F, pp. 2, 7, 13). The doctor maintained the same treatment plan, prescribing the claimant neuropathy medication and recommending improved diet and exercise (Exhibit 14F). As consistent with previous notes, the claimant's treating doctor also advised the need for claimant's compliance to prescribed treatment; this was in response to the claimant's report that he had not been entirely compliant with his medication (Exhibit 15F, p. 14).

///

///

15

On September 23, 2014, Dolores M. Leon, M.D., Board eligible in internal medicine, conducted a complete consultative internal medicine evaluation of the claimant (Exhibit 7F). The claimant's chief complaints were hypertension and diabetes with neuropathy. Positive findings from the physical examination included: ankle edema with blackened bilateral big toenails and absent sensitivity in his fifth finger. However, there were no other positive findings, including negative straight leg raising and full 5/5 strength in his upper and lower extremities, including his bilateral grip. Dr. Leon diagnosed the claimant with hypertension and diabetes mellitus with peripheral neuropathy, out of control, obesity, and history of prostate cancer, status post treatment.

CAR 21-23.

2. <u>Plaintiff's Contentions</u>

Plaintiff argues:

> As set forth in *Smolen*, "once a claimant meets the Cotton test and there is no affirmative evidence of malingering, the ALJ may reject the claimant's testimony regarding the severity of her symptoms only if he makes specific findings stating clear and convincing reasons for doing so." *Smolen v. Chater*, 80 F.3d 1273 (9th Cir. 1996). In the instant case, there was no evidence of malingering. Indeed, NP Shirikian specifically found that he was not a malingerer. AR 508. As briefed above, the ALJ failed to articulate a convincing reason for discrediting Mr. Fields's testimony and there was no evidence of malingering, consequently his testimony should have been credited. Where, as here, "the ALJ improperly rejects the claimant's testimony regarding his limitations, and the claimant would be disabled if his testimony were credited, 'we will not remand solely to allow the ALJ to make specific findings regarding that testimony.'" *Lester v. Chater*, 81 F.3d 821, 834 (9th Cir. 1996), *quoting Varney v. Secretary of Health and Human Services*, 859 F.2d 1396, 1401 (9th Cir. 1988). "Rather, that testimony is also credited as a matter of law." *Id. See also*, *Moisa v. Barnhart*, 367 F.3d 882 (9th Cir. 2004).

3. <u>Disposition – The ALJ Discounted Plaintiff's Testimony Based on Valid Reasons Supported by the Record</u>

The ALJ accurately noted that the claimant's statements as to the extent of his symptoms and the limiting effects are "compelling only to the extent that they are consistent with the evidence." AR 21, 20 CFR 404.1529(a); <u>Dodrill v Shalala</u>, 12 F. 3d 915, 918 (9th Cir. 1993). The ALJ is not required to believe pain testimony and may disregard it if there are no objective medical findings which could reasonably be expected to cause some pain. If he rejects it, however, he must justify his decision with specific findings." Here, the ALJ has properly determined that Plaintiff's testimony is inconsistent with the medical evidence and thus lacking credibility.

16

Notwithstanding Plaintiff's contentions to the contrary, the ALJ's analysis considered the credibility of Plaintiff's statements and identified material inconsistencies with the medical evidence in the record. (Exhibits 1F through 18F). As detailed in the excerpts from AR 21-23 above, the ALJ cited with specificity that while the claimant alleged that his physical impairments inhibit his ability to work or perform daily activities, he has nonetheless engaged in a somewhat normal level of daily activity, including going on walks, personal grooming and hygiene, household chores, gardening, meal preparation, using a computer, and fixing things. (Exhibit 7F). The ALJ appropriately found that "the ability to participate in such activities affects the persuasiveness of the claimant's allegations of functional limitations" AR 21.

The ALJ's determination regarding Plaintiff's credibility is underscored by the record evidence that the claimant's treatment was rather "routine and conservative." See AR 22, despite Plaintiff's contentions as to the alleged intensity of his several impairments. Further, even that routine treatment was not respected by the claimant, and the ALJ noted that the record indicated the claimant was "not entirely compliant with his treatment." The ALJ noted that for one treating doctor, claimant "did not take his medication," and for another doctor "the claimant did not show up for his appointment" and was subsequently discharged from the clinic. AR 22-23. The unexplained failure to follow a prescribed course of treatment is among the grounds for discounting a claimant's credibility, as the ALJ properly did here. Smolen v. Chater, 80 F.3d 1273 (9th Cir. 1996), Tommasetti v. Asture, 533 F.3d 1035, 1039 (9th Cir. 2008).

The ALJ discounted Plaintiff's contentions of disabling symptoms based on appropriately cited evidence from the record, and the Court finds no merit in Plaintiff's charge that "the ALJ failed to articulate a convincing reason for discrediting Mr. Field's testimony." As with Plaintiff's other challenge to the ALJ's findings, this contention offers no grounds for relief.

/ / /

/ / /

/ / /

/ / /

/ / /

# IV. CONCLUSION

Based on the foregoing, the court concludes that the Commissioner's final decision is based on substantial evidence and proper legal analysis. Accordingly, IT IS HEREBY ORDERED that:

1. Plaintiff's motion for summary judgment (ECF No. 21) is denied;
2. Defendant's motion for summary judgment (ECF No. 22) is granted;
3. The Commissioner's final decision is affirmed; and
4. The Clerk of the Court is directed to enter judgment and close this file.

Dated: July 10, 2019

DENNIS M. COTA
UNITED STATES MAGISTRATE JUDGE